IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA


UNITED STATES OF AMERICA,                    CASE NUMBER: 22-20501-CR-BLOOM

        Plaintiff,

vs.

SOAMI TATIANA MERA PALOMINO,
*et. al.*,

        Defendants,

_____ /


**DEFENDANT MARIO AURELIO VITERI-LEON**
**SENTENCING MEMORANDUM, EXHIBITS and REQUEST FOR VARIANCE**


    Defendant, MARIO AURELIO VITERI-LEON ("Mr. Viteri-Leon") by and through

his undersigned counsel, and pursuant to Title 18 U.S.C. §3553(a), herein files this

Sentencing Memorandum and Request for Variance and states as follows:

    *(I) Introduction*

    Mr. Viteri-Leon shall stand before this Court on sentencing day and this Honorable

Court shall impose a sentence this Court deems just. Mr. Viteri-Leon has plead guilty to

possessing with intent to distribute three kilograms of cocaine on October 14, 2022. Before

his actions in this case, Mr. Viteri-Leon had never possessed, negotiated, or in anyway

Page 2
USA v. Soami Tatiana Mera Palomino, *et. Al.*, Case Number:22-20501-CR-BLOOM
*Defendant Mario Aurelio Viteri-leon's Sentencing Memorandum, Exhibits and Request for Variance*

involved himself in the distribution of narcotics[1]. What Mr. Viteri-Leon has possessed and

has involved himself in during the course of his entire life, has been instrumentalities and

characteristics of an honest, hard-working individual. He has earned the respect of co-

workers, friends and family members. Mr. Viteri-Leon is not perfect man, however, the facts

of this case unequivocally demonstrate that his actions in this case where outside of his

character.

### (II) Request For Variance

On April 5, 2023 the Sentencing Commission met and voted to promulgate the

Proposed Amendments to the United States Sentencing Guidelines. Many of the Proposed

Amendments are in response to the Congressional Directive to the Sentencing Commission

which seeks to limit long periods of incarceration only to violent offenders and offenders of

very serious crimes. United States Sentencing Commission Chairman, Carlton W. Reeves in

his opening remarks explained that many of the Amendments promulgated by the Sentencing

Commission were being proposed in order to "give judges more discretion to expand non-

incarceration options to more people[2]".

Chairman Reeve's remarks are in keeping with the trajectory that began with the

---

[1]At the time of his arrest, Mr. Viteri-Leon was in possession of a small amount of marijuana for his personal use.

[2]https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230405/20230405_remarks.pdf (page 18-19).

Page 3
USA v. Soami Tatiana Mera Palomino, *et. Al.*, Case Number:22-20501-CR-BLOOM
*Defendant Mario Aurelio Viteri-leon's Sentencing Memorandum, Exhibits and Request for Variance*

Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), and followed by *Kimbrough v. United States*, 128 S.Ct. 558 (2007), *Rita v. United States, 127 S. Ct. 2546 (2207),* and *Gall v. United States*, 128 S.Ct. 586  (2007).  A trajectory which for the past eighteen years has resulted in imposing lower sentences for non-violent, first offenders with a particular emphasis on individualized sentencing.  Thus, while the Guidelines remain "the starting point and the initial benchmark" in determining a sentence, this Court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented."  Gall*, supra* at 596-598.

One of the most recent examples of the Sentencing Commission's commitment to the trajectory that began post-*Booker*, has come in the form of the proposed amendment to the Advisory Guidelines. Of particular note is the proposed Amendment  which creates a new section under **"***Chapter Four - Criminal History and Criminal Livelihood" entitled:  §4C1.1 Adjustment for Certain Zero-Point Offenders*.[3] This new provision calls for a 2-point decrease of the total base offense level of the applicable Guidelines. Therefore, should Congress adopt this particular Amendment in November, the Advisory Guideline applicable to Mr. Viteri-Leon would be a range of 30-37 months versus the current 37-46 month Advisory Guideline range.  Again, this Amendment is in keeping with the Congressional

---

[3]See
https://www.ussc.gov/sites/default/files/pdf/amendment-process/federal-register-notices/20230201_fr-proposed-amdts.pdf (page 211-212).

Page 4
USA v. Soami Tatiana Mera Palomino, *et. Al.*, Case Number:22-20501-CR-BLOOM
*Defendant Mario Aurelio Viteri-leon's Sentencing Memorandum, Exhibits and Request for Variance*

mandate affording the opportunities for non-violent, "zero-point offenders" a decrease in the applicable guideline range, which together with the §3553(a) factors, would allow for the lowest possible term of incarceration or even a non-prison sanction. The proposed Amendments to the United States Sentencing Guidelines also serve to make the necessary changes to the Guidelines as provided for by the First Step Act[4].

The evidence in this case reveals a man who has engaged in behavior that was totally uncharacteristic. Before his involvement in this offense, Mr. Viteri's life was define as that of a hard-working man, dedicated to family-- in particular to his beloved, son Camilo--[5]as well as a man who was striving to achieve his long-time dream of owning his own restaurant in the United States. It is his hope that after this Honorable Court has reviewed the facts and circumstances of his life, as well as the circumstances of this offense, and when applying the sentencing factors under 18 U.S.C. §3553(a), this Court shall impose a "*sentence that is sufficient, but not greater than necessary*" comply with the purposes of sentencing. It is most respectfully submitted that a sentence *not to exceed 366 days* ( one year and a day) of incarceration will more than adequately serve to justly punish Mr. Viteri-Leon for his conduct.

---

[4] Pub.L. 115-391, 132 Stat. 5239 (2018).

[5]Mr. Viteri-Leon's son's name is "Mario Camilo", however, he is commonly referred to as "Camilo".

Page 5
USA v. Soami Tatiana Mera Palomino, *et. Al.*, Case Number:22-20501-CR-BLOOM
*Defendant Mario Aurelio Viteri-leon's Sentencing Memorandum, Exhibits and Request for Variance*

**(A) Aberrant Behavior**

The current Advisory Guideline in this case calls for a guideline range of 37-46 months.  Mr. Viteri-Leon, a first time, non-violent offender seeks a variance from the Advisory Guidelines based on the aberrant nature of his conduct. While the facts and circumstances of this case fit within the confines of a departure for aberrant conduct under §5K2.0 of the Advisory Guidelines, nonetheless is important to note that as a result of *Booker*, this Court is empowered to grant a variance based on aberrant behavior, "without the limitations on the use of factors to permit departures". See *United States v. Nesbeth*, 188 F.Supp.3d 179 (E.D. N.Y.2016), see also *United States v. Derusse*, 859 F.3d 1232 (10th Cir.2017) "a variance can be imposed without compliance with the rigorous requirements for departures"(citing *United States v. Ganutt*, 679 F.3d 1240, 1247 (10th Cir. 2012).  Therefore, while is respectfully submitted that the aberrant nature of Mr. Viteri-Leon's conduct is *extraordinary* in nature, this Court is now free to impose a below-Guideline sentence even in the absence of extraordinary circumstances.  See *Gall*, 128 S.Ct. at 595.

**History and Characteristics of the Offender under §3553(a)(1)**

The evidence of the aberrant nature of Mr. Viteri-Leon's behavior is evidenced in many ways. First, his participation in this offense is consistent with an inexperienced individual who was out of his league and who was utilized by others in order to shield themselves from detection by law enforcement. Mr. Viteri-Leon was the puppet and the

Page 6
USA v. Soami Tatiana Mera Palomino, *et. Al.*, Case Number:22-20501-CR-BLOOM
*Defendant Mario Aurelio Viteri-leon's Sentencing Memorandum, Exhibits and Request for Variance*

others were tugging at the strings.  The facts of this case are such that co-defendant, Jorge Sisniegas Diaz acknowledged that he first met Mr. Viteri-Leon a day before the arrest. It was co-defendant Sisniegas who was entrusted with the three kilograms of cocaine, and indeed at one point, Mr. Sisniegas was in possession of as much as 50 kilograms of cocaine. To Mr. Sisniegas's credit, subsequent to his arrest he surrendered  500 additional grams of cocaine that he had in his possession.  (See ¶19 of the Pre-Sentence Investigation Report, herein after referred to as "PSI", see also. *DE:41-Sisniegas's Factual Proffer)*.  It was Mr. Sisniegas Diaz who gave the three kilograms of cocaine to co-defendant Soami Tatiana Mera and to Mr. Viteri-Leon for distribution to the confidential informant.  (See ¶'s 15 and 19 of the PSI, DE: 41).

**(1)  Testimonials of Mr. Viteri-Leon's Commitment to Family, Friends & Hard Work**

Mr. Viteri-Leon comes from a close family unit with many life-long friends. As demonstrated by the evidence in this case, Mr. Viteri-Leon has surrounded himself with the love and support of family and friends.  Until the day of his arrest, Mr. Viteri-Leon substantially contributed to both, the financial and emotional support of his beloved son, Camilo, he contributed to the support of his wife, Zaida Cruz, and his step-children, as well as partially assisted his former spouse, Maria Cristina Reyna. The support provided to his family and friends was not limited to financial support. Rather, Mr. Viteri-Leon has  assisted

Page 7
USA v. Soami Tatiana Mera Palomino, *et. Al.*, Case Number:22-20501-CR-BLOOM
*Defendant Mario Aurelio Viteri-leon's Sentencing Memorandum, Exhibits and Request for Variance*

and nurtured his family and his friendships with acts of kindness and emotional support. The "Index to Exhibits" attached hereto, serves as evidence in support of the request for a variance, and comes in the form of declarations from family, friends, co-workers and former employers. Additional documentary evidence attached details Mr. Viteri-Leon's education and vocational training, excerpts of which shall be highlighted below. Furthermore, the attached evidence shall be supplemented with testimony at the sentencing hearing. The excerpts are as follows:

▪**Declaration of Aithia Paola Viteri-Leon (sister)**: "we are people who like to help others without asking for anything in return". Mr. Viteri-Leon is "much loved by his clients for his charisma and his friendly manner, respectful and helpful personality". **(see Exhibit B-1)**

▪**Declaration of Marcel Guillermo Defranc Zambrano (brother-in-law):** Mr. Defranc Zambrano, who is aware of Mr. Viteri-Leon's case before this Court, states: "I can attest that Mario is a person of integrity, responsibility, honesty, very hardworking and overall an excellent father. He is also very caring with my children. I have witnessed his formation and the efforts he made to become a chef...starting from zero, he has made it to recognized restaurants and has been recognized for being a culinary representative of Ecuadoran gastronomy". **(see Exhibit B-2)**

▪**Declaration of Maria Cristina Reyna (former spouse)**: Ms. Reyna is also aware of Mr. Viteri-Leon's case before this Court, under penalty of perjury she states that she has known

Page 8
USA v. Soami Tatiana Mera Palomino, *et. Al.*, Case Number:22-20501-CR-BLOOM
*Defendant Mario Aurelio Viteri-leon's Sentencing Memorandum, Exhibits and Request for Variance*

Mr. Viteri-Leon for more than 15 years . They have a 14-year son, Camilo. Ms. Reyna characterizes, Mr. Viteri-Leon as an excellent father, both as a provider of financial support, but also as a father who spends quality time with Camilo. In support of this belief she relates an incident which took place last year when Camilo was required to present a school project calling for presentation of a traditional food from his country. She  called upon Mr. Viteri-Leon at the last minute to help Camilo with this school project. Mr. Viteri-Leon cooked until midnight so that his son could present a traditional dish to his class. The time spent between father and son included a trip to Orlando where Mr. Viteri-Leon participated in a  Jiujitsu competition, Mr. Viteri-Leon taught Camilo the sport and discipline that is Jiujitsu, Mr. Viteri-Leon being a part of Camilo's friends and  encouraging and assisting his son with fostering and nurturing of his friendships. This is in keeping with what was taught to Mr. Viteri-Leon, as evidenced by testimonials of Mr. Viteri-Leon's own friends. Mr. Reyna further details the many ways Mr. Viteri-Leon helps others, including her family, notwithstanding the fact that they are no longer married.  Finally, Ms. Reyna provides details regarding Mr. Viteri-Leon's work ethic, including the long hours, the many different jobs he has held, oftentimes holding more than two jobs at the same time.  **(see Exhibit B-3)**

■**Declaration of Cristian Bravo Torres, DDS (Long-time friend):** Dr. Bravo Torres, under penalty of perjury states that he has known Mr. Viteri-Leon for more than 20 years, since the time they were adolescents and he has seen Mr. Viteri-Leon grow into a "a hard-working

Page 9
USA v. Soami Tatiana Mera Palomino, *et. Al.*, Case Number:22-20501-CR-BLOOM
*Defendant Mario Aurelio Viteri-leon's Sentencing Memorandum, Exhibits and Request for Variance*

man, dedicated to his family, mainly dedicated to his son with whom he spends most of his time, teaching him his passion for the martial arts and his art for haute cuisine exercising his work as a professional chef." Dr. Bravo Torres concludes that "for this reason I can indicate that he has been of great help and support to me and my family when I needed him thus I believe and trust in his great humanity and his contribution to the social environment, this is all I can say in honor of the truth."  **(see Exhibit B-4)**

■**Angel Javier Gomez Quinonez (long-time friend)**: Mr. Gomez Quinonez states that he has known Mr. Viteri-Leon for more than seventeen years, their love of soccer and their work having brought them together. "I love him as if he were my own blood." Mr. Gomez Quinonez further declares, "I remember when he helped me make my commercials during my college student days and later when I graduated obtaining a social communicator degree and worked in a professional agency, he was also my production assistant always trying to make an effort, there was a time when we were so close that we even lived together and he was a great support for my younger brother. Cousin Mario has always been part of my life, collaborating in my entrepreneurial projects or sharing with my family. During the time that I have known him, I can attest that Mario is a person of integrity, responsibility, honest, caring, an excellent uncle for my daughter Morena and above all a great example as a father for myself, since I admire his relationship with Camilo, his son, whom I have known since the day he was born, that is why he calls me uncle, I value him as a great friend and as if he

Page 10
USA v. Soami Tatiana Mera Palomino, *et. Al.*, Case Number:22-20501-CR-BLOOM
*Defendant Mario Aurelio Viteri-leon's Sentencing Memorandum, Exhibits and Request*
*for Variance*

were a brother." Of Mr. Viteri-Leon's commitment to his craft, writes, "It has been from his

training and career to be a chef and with a lot of sweat he managed to make a name for

himself." Mr. Viteri-Leon also assisted Mr. Gomez Quinonez with his building his small

business in Miami. With respect to Mr. Viteri-Leon's criminal conduct, Mr. Gomez

Quinonez states, "I am very sorry for Mario's situation, Honorable Judge, and I can state that

the errors that he may have committed do not define who he is as a person, Mario has many

virtues that far outweigh his mistakes." "  **(see Exhibit B-5)**

■ **Ezequiel A. Sanguinet - (former co-worker and friend)**[6] Mr. Sanguinet states that he has

known, Mr. Viteri-Leon for more than six years when they met at a food event in Coconut

Grove where they were both working.  He characterizes Mr. Viteri-Leon as a "good human

being" who always "likes to help" and who can always be "counted on", "a person who I

always saw working and striving". **(see Exhibit C-5)**

### (2) Documentation of Mr. Viteri-Leon's Employment, Education and Community Involvement

Mr. Viteri-Leon is a high school graduate. **(see Exhibit A-1)**. He enrolled in and took

---

[6]Mr. Sanguinet also served as one of the two sureties on Mr. Viteri-Leon's personal surety bond stipulated to by the Government in this case. Mr. Sanguinet was advised by the Honorable Judge Lauren Louis of the financial consequences Mr. Sanguinet would face should Mr. Viteri-Leon not comply with the terms and conditions of his bond. In response to the Court's advisory and admonishing, Mr. Sanguinet, a home owner, agreed to serve as surety and advised the Court that he had full faith in Mr. Viteri-Leon. Unfortunately, Mr. Viteri-Leon was served with a detainer by the Department of Immigration & Customs Enforcement, he remained detained.

Page 11
USA v. Soami Tatiana Mera Palomino, *et. Al.*, Case Number:22-20501-CR-BLOOM
*Defendant Mario Aurelio Viteri-leon's Sentencing Memorandum, Exhibits and Request
for Variance*

classes for a business degree, however, he did not complete the requisites of the degree. **(See
Exhibit A-2)**. He held many jobs in Ecuador, most of which involved employment as a cook,
and with the honing of his culinary skills, he performed the job of assistant cook and later
head chef.  **(See Composite Exhibit B, B-2, B-4, B-5** and **B-9)**. Since his arrival to the
United States, Mr. Viteri-Leon has engaged in lawful employment. He has worked tirelessly
in pursuit of his life-long vocation of chef. **(See Exhibit Composite Exhibit B** and **C, B-1,
B-3, B-10,4, C-4).** He has worked in restaurants of fine dining. He worked as a Sous chef in
Lique Restaurant, as well as SeaGrass, was characterized by these employers as a
"responsible", "hard-working individual", who "always arrived to work on time". (**See
Composite Exhibit C, C-1** and **C-2)**. Mr. Viteri-Leon also worked at various different
restaurants and venues, all in the pursuit of mastering his craft and fulfilling his life-long
dream.  **(See Exhibits C-2)**. He has continued to further his vocation by engaging in virtual
programs, conferences, and local events. (See **Composite Exhibit A** and **C**, **A-3**, **A-4,** and
**A5I** thru **A5V** and **C-3**). Mr. Gallardo de la Puente, Executive Director of *Taste Ecuador,*
who has known Mr. Viteri-Leon for more than ten years, has referred to Mr. Viteri-Leon as,
"a reference of good Latin cuisine he has propriated that himself could dictate various
conferences in local Universities in their gastronomy schools as in the largest university in
Ecuador Uniandes and he was named embassador of the Ecuadoran cuisine." **(see Exhibit
C-3**.

Page 12
USA v. Soami Tatiana Mera Palomino, *et. Al.*, Case Number:22-20501-CR-BLOOM
*Defendant Mario Aurelio Viteri-leon's Sentencing Memorandum, Exhibits and Request
for Variance*

### Nature and Circumstances of the Offense under §3553(a)(1)

The nature of this offense and Mr. Viteri-Leon's role compels this Court to exercise it's discretion and impose a sentence outside of the Advisory Guideline range. Mr. Viteri-Leon was out of his league in this case. As previously indicated, Mr. Viteri-Leon participated in a controlled purchase of cocaine. He participated on the day that a sample of cocaine was provided to the confidential informants, and along with co-defendant Mera-Palomino, took possession of the cocaine from co-defendant Sisniegas-Diaz on the day of his arrest. The negotiations were actively pursued between the confidential informants and co-defendant Ms. Mera-Palomino, and Mr. Viteri-Leon served as the transmitter of information from those who called the shots. It is important to note that while Mr. Viteri-Leon and his co-defendants were initially charged with a conspiracy for ten kilograms of cocaine, clearly and unequivocally, the evidence in this case shows that Mr. Viteri-Leon never agreed to a transaction of ten kilograms of cocaine. Indeed, while the confidential informant was pushing for a ten kilogram deal during, not only was there not an agreement for a ten kilogram deal-- but more importantly--the suppliers of cocaine in this case did not have ten kilograms of cocaine was available for sale.

Mr. Viteri-Leon will present additional facts and arguments pertaining to the nature and circumstances of his involvement in this case as the sentencing hearing.

A term of incarceration of not more than one year and one day would serve as the

Page 13
USA v. Soami Tatiana Mera Palomino, *et. Al.*, Case Number:22-20501-CR-BLOOM
*Defendant Mario Aurelio Viteri-leon's Sentencing Memorandum, Exhibits and Request for Variance*

appropriate punishment for Mr. Viteri'Leon's extreme lapse in judgment, which was fueled by an unprecedented amount of emotional and financial stress as a result of the demands of his employment at Lique and other issues that shall be detailed at sentencing hearing. Mr. Viteri-Leon has lost a great deal more than his freedom. His has lost his life in the United States, a life with his son, Camilo, most especially. He has lost the chance to fulfill his dream of opening his own gourmet restaurant in south Florida. These collateral consequences to Mr. Viteri-Leon are in a real sense, much worse, than a sentence within the advisory Guidelines. Collateral consequences of this case to Mr. Viteri-Leon can be considered and factored into consideration of the §3553(a) sentencing factors. Courts have weighed the collateral damage of a conviction when considering the appropriate sentence. See *United States v. Nesbeth*, *supra* at 195, wherein the district court found defendant's inability to pursue a teaching career and the goal of becoming a school principal as a result of defendant's conviction was sufficient punishment and a sentence of incarceration was not necessary to render a punishment that is sufficient but not greater than necessary to meet the ends of sentencing. See also *United States v. Jaime*, 235 F.Supp.3d 262, 265 (D. D.C. 2017).

Often times, we forget about all the different forms of punishment that a defendant is subjected to, in addition to a prison sentence. Viteri-Leon will no longer be able to acquire lawful permanent residency in the United States. He will now be forced to chose between living thousands of miles apart from his beloved allowing for Camilo to be raised in a safe

Page 14
USA v. Soami Tatiana Mera Palomino, *et. Al.*, Case Number:22-20501-CR-BLOOM
*Defendant Mario Aurelio Viteri-leon's Sentencing Memorandum, Exhibits and Request
for Variance*

and secure environment in the United States, or to expose Camilo to the dangers and lack of

opportunities in Ecuador so that father and son may be together. This is a Hobbesian choice

if ever there was one. The anguish that he has been experiencing since his arrest on October

14, 2023 cannot be measured. He has not seen his beloved son since October 14th. Mr. Viteri-

Leon shall not expose his son to a prison environment, an environment which is so foreign

to Mr. Viteri-Leon, and indeed his family and closest friends. This is not an environment that

Mr. Viteri-Leon is familiar with and it is not an environment that he would subject his son

to.

Clearly this first offense is to be viewed as an aberrant act of his otherwise law-

abiding life. He has been gainfully employed all of his life. Indeed, he has worked long,

arduous hours, and he has engaged in meaningful activities in his community.  He is a loving

father, who not only has financially supported his son, but a father who is actively engaged

in his son's life.  He has formed loving and long-lasting relationships with all of his family

members and his friends.

The guideline calculation of 37-46 months is but one measure of the seriousness of

the offense but is not always a reliable proxy for the culpability of an individual defendant.

See *United States v. Suarez-Reyes*, (D. Neb. 2012), see also *United States* v . Ysidro Diaz,

Case No.: 11-CR-821-2 (S.D.N.Y 2011)(Judge John Gleeson, presiding).

Based on the history and characteristics of Mr. Viteri-Leon, a sentence of 366 days

Page 15
USA v. Soami Tatiana Mera Palomino, *et. Al.*, Case Number:22-20501-CR-BLOOM
*Defendant Mario Aurelio Viteri-leon's Sentencing Memorandum, Exhibits and Request for Variance*

would more than serve to deter him from ever engaging in criminal activity again. Just as the Court in *Gall* concluded that the defendant therein was not going to return to criminal behavior and is not a danger to society", likewise, given way Mr. Viteri-Leon conducted himself before his actions in this case, this Court should likewise feel confident that Mr. Viteri-Leon will not pose a danger to the community nor is he likely to engage in criminal behavior again. *Gall* supra at 57, 128 S. Ct. At 601.

### (III) Conclusion

It is respectfully submitted that Mr. Viteri-Leon has shown that a variance from the Advisory Guideline range is warranted and that a sentence not to exceed 366 days will more than adequately served the goals of punishment.  Mr. Viteri Leon has made extraordinary efforts to show his shame and remorse so that he may redeem himself, not only in the eyes of his family, but also in the eyes of the Government. As the late Honorable Judge Weinstein noted many years ago, "Unlike their district court colleagues, appellate judges can neither *look defendants in the eye...nor struggle  with assessing whether an offender is beginning or ending a criminal career, appears to be dangerous or harmless, is a minnow in a sea of big fish, **or has gone astray under unusually stressful circumstances and will not offend again.** Appellate judges [do no see] large numbers of worried or stunned faces...*

*United States v. Naugle,* 879 F.Supp 262, 267 (E.D.N.Y. 1995)(Judge Jack B. Weinstein, presiding)(in part quoting from Roger K. Newman's biography of Hugo Black. *(Emphasis added)(internal citations omitted).*

**Page 16**
***USA v. SOAMI TATIANA MERA PALOMINO, Case Number:22-20501-CR-Bloom***
***Mario Viteri-Leon's Sentencing Memorandum, Exhibits and Request for Variance***

I HEREBY CERTIFY that a copy of the foregoing document was electronically filed

with the Clerk of the Court using CM/ECF and via e-mail to all co-counsel of record on this

   18ᵗʰ day of   April   2023.

RESPECTFULLY SUBMITTED,

ANA M. JHONES, ESQ.
Haley & Jhones, P.A.
9100 S. Dadeland Blvd., Suite 1500
PMB #150048
Miami, FL   33156
Telephone: (305) 661-4637
E-mail:  ajhones@hsaalegal.com

BY:   *Ana Maria Jhones*
        Florida Bar No.: 771170

**Page 17**
*USA v. SOAMI TATIANA MERA PALOMINO, Case Number:22-20501-CR-Bloom*
*Mario Viteri-Leon's Sentencing Memorandum, Exhibits and Request for Variance*

### INDEX TO EXHIBITS

**EXHIBIT A (Composite) - EDUCATION, VOCATIONAL, CERTIFICATES**

A-1  High School Diplomas 2001
   (and translation)

A-2 University Metropolitan Identification of Mr. Leon 2003
    (and translation)

A-3 *Pro Ecuador* Certificate for virtual training by Mr. Viteri Leon 2022

A-4 *Ecua-Exquisite-Dor* Certificate of Attendance Mr. Viteri Leon
    Workshop 2018

A-5I thru A5V - Photographs of Culinary Events

**EXHIBIT B - (Composite) CHARACTER REFERENCE LETTERS**

B1 - Alithia Paola Viteri-Leon (sister)
    (and translation)

B-2 - Marcel Guillermo Defranc Zambrano (brother-in-law)

B-3 Cristina Maria Reyna (former spouse)
    (and translation)

B-4 Cristian Bravo Torres, DDS (long time friend)
    (and translation)

B-5 Angel Javier Gomez Quinonez (long time friend)
    (and translation)

B-6 Ana Gabriela Duchely Paladines, DDS (long time friend)
    (and translation)

**HALEY & JHONES, P.A.**
**9100 S. Dadeland Blvd., Suite 1500, Miami, FL  33156, Telephone: (305) 661-4637**

Page 18
*USA v. SOAMI TATIANA MERA PALOMINO, Case Number:22-20501-CR-Bloom*
*Mario Viteri-Leon's Sentencing Memorandum, Exhibits and Request for Variance*

        B-7 Liliana Bestabeth Garcia Leon (cousin)
           (and translation)

        B-8 Jorge Josue Harb Penilla (long time friend)
           (and translation)

        B-9  Juan Pablo Jaramillo Palomino (long time friend)
           (and translation)

        B-10 Luis Viteri (nephew)

        B-11  Adrian Adum - (long time friend)
           (and translation)


**EXHIBIT C -EMPLOYMENT REFERENCES**

        C-1 - Martin Westinner, Lique Restaurant (former employer)

        C-2 - Lauren De Meo, Seagrass (former employer)

        C-3  Carlos Gallardo de la Puente, Zero Lab Restaurant (business colleague)
           (and translation**)**

        C-4 Ezequiel A. Sanguinet (co-worker/friend)
           (and translation)


**EXHIBIT D  -PHOTOGRAPHS**

        D-1   Certificate of Death - Father (and translation)
        D-2   Mr. Viteri-Leon Jijutsu
        D-3 - Family Photos